**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Princepal Singh, | No. CV-26-03117-PHX-RM (ASB) |
| Petitioner, | **ORDER** |
| v. | |
| David R Rivas, et al., | |
| Respondents. | |

Petitioner Princepal Singh challenges his present immigration detention under 28 U.S.C. § 2241. (Doc. 1.) Respondents filed a response on May 26, 2026. (Doc. 6.) Petitioner filed a reply on June 11, 2026. (Doc. 11.) For the following reasons, the Court will grant the Petition to the extent Petitioner requests a bond hearing in which the burden of proof rests with the Government.

**I.     Background**

Petitioner was born in India in 1996. (Doc. 1 at 4.) He arrived in the United States sometime in August 2022. (*Id.* at 5.) Petitioner entered the United States without admission or inspection by an immigration officer. (*Id.* at 5.) Shortly after his entry into the United States, Petitioner was encountered and arrested by Border Patrol agents. (*Id.*) Removal proceedings were initiated against him. (*Id.*) On August 22, 2022, Petitioner was paroled into the United States pursuant to 8 U.S.C. § 1182. (Doc. 6-1 at 2.) Petitioner asserts that he fully complied with all conditions of his release. (Doc. 1 at 6.) Respondents assert that

Petitioner "subsequently violated his parole multiple times between 2022-2025 despite multiple warnings to comply." (Doc. 6 at 1.) Respondents state that Petitioner "missed multiple scheduled office visits, traveled outside of the restricted zone, and failed to maintain his ankle monitor." (*Id.*) In his reply, Petitioner avers that if he did travel outside the restricted zone, any such violation was "unintentional and resulted from [his] misunderstanding of the specific boundaries" imposed upon him. (Doc. 11 at 1.)

On July 27, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained Petitioner. (*Id.* at 2.) Respondents assert that at the time of Petitioner's arrest, he was served with a notice of revocation of parole and an administrative arrest warrant. (*Id.*) The arrest warrant stated that the issuing immigration officer had determined that there was probable cause to believe that Petitioner was removable from the United States. (Doc. 6-3 at 2.) The notice of revocation of parole stated that "[n]either urgent humanitarian reasons nor significant public benefit warrant your continued parole at this time." (Doc. 6-11 at 2.) Petitioner asserts that he was detained without an arrest warrant. (Doc. 1 at 6.) Petitioner's removal proceedings have continued to progress during the time he has been detained. (*Id.* at 7.) On October 22, 2025, an immigration judge denied Petitioner's asylum request and ordered his removal. (*Id.*) Petitioner appealed that decision to the Board of Immigration Appeals, and the appeal remains pending. (*Id.*)

Petitioner first challenged his immigration detention in a prior action filed on February 2, 2026. (*Singh v. Rivas*, 2:26-cv-00646-RM-ASB.) In that action, Petitioner only challenged the statutory basis for his detention, arguing that he was wrongfully detained pursuant to 8 U.S.C. § 1225, and that the correct basis for his detention was 8 U.S.C. § 1226. (*Id.* at Doc. 1.) The Court granted the Petition in that action and ordered that Petitioner receive a bond hearing under 8 U.S.C. § 1226. (*Id.* at Doc. 11.) Petitioner was denied bond. (*Id.* at Doc. 17.)

Liberally construed, the Petition in this action claims that Petitioner's re-detention without procedures in addition to those statutorily granted under 8 U.S.C. § 1226 violated

the Due Process Clause of the Fifth Amendment.[1] (*See* Doc. 1.) Respondents respond that this Court has no jurisdiction to review the discretionary decision of the Secretary of Homeland Security to re-detain Petitioner, and that Petitioner received all the process he was due because he was served with a valid arrest warrant. (Doc. 6.)

## II.    Discussion

### a.  Jurisdiction

District courts in the Ninth Circuit have repeatedly determined that jurisdiction exists to review the constitutionality of the procedures by which a noncitizen is re-detained after being released on humanitarian parole. *See, e.g.*, *Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295 (W.D. Wash. Nov. 25, 2025); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629 (S.D. Cal. Sept. 26, 2025); *Noori v. LaRose*, 807 F. Supp. 3d 1146 (S.D. Cal. 2025); *Gaitan Coreas v. Mullin*, No. 2:26-CV-00591-GMN-DJA, 2026 WL 1121974 (D. Nev. Apr. 24, 2026). Respondents misconstrue Petitioner's Petition as seeking review of the decision by the Secretary of Homeland Security to re-detain Petitioner. (*See* Doc. 6 at 2.) Petitioner does not seek review of that decision, but rather review of the adequacy of the procedures employed to re-detain him after the Secretary decided to seek Petitioner's re-detention.[2] (*See* Doc. 1.) Accordingly, this Court has jurisdiction over Petitioner's claim, and will consider the merits of the Petition.

---

[1] Petitioner additionally states that his detention violates due process because there is no realistic possibility of his being removed from the United States in the near future, apparently raising a claim under *Zadvydas v. Davis*. After the entry of a final removal order, there is a 90-day period during which the alien ordered removed must be detained. 8 U.S.C. § 1231(a)(2)(A). If removal does not occur during the 90-day period, further detention is statutorily authorized in certain circumstances. 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Court held that detention beyond the 90-day removal period is presumptively reasonable for 6 months; if an alien shows after the conclusion of the 6-month period that there is no significant likelihood of his removal in the reasonably foreseeable future, however, he should be released. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). The Court's holding in *Zadvydas* is confined to § 1231(a)(6). *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018). Petitioner is not subject to a final order of removal because his appeal of the immigration judge's removal order remains pending before the BIA.  Accordingly, *Zadvydas* is inapplicable.

[2] Respondents present an argument that this Court lacks jurisdiction to adjudicate "Petitioner's challenge under the Administrative Procedure Act." (Doc. 6 at 4.) Given that Petitioner invokes only this Court's jurisdiction under 28 U.S.C. § 2241, and does not mention the Administrative Procedure Act ("APA") in his Petition, the Court will not address Respondents' discussion of the APA.

### b. Due Process

Many district courts have held that individuals who are released from immigration detention are entitled to a pre-deprivation hearing prior to re-detention as a matter of due process. *See*, *e.g.*, *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021 (N.D. Cal. 2025) (holding that petitioner released on bond had protected liberty interest in continued release); *Tinoco v. Noem*, 818 F. Supp. 3d 1141 (E.D. Cal. Dec. 14, 2025) (granting petitioner's immediate release from custody where petitioner was released on an order of release on recognizance and later re-detained without a bond hearing); *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182-84 (D. Haw. 2025) (same). Where the record shows that a detainee has had violations of his release conditions, due process may instead require a post-deprivation hearing in which the burden of showing the detainee to be a danger or a flight risk rests with the Government. *Karen Dayana M. R. v. Chestnut*, No. 1:25-CV-01992-SKO (HC), 2026 WL 218808 (E.D. Cal. Jan. 28, 2026) ("On balance, the *Mathews* factors show that Petitioner is entitled to a post-deprivation hearing pursuant to 8 U.S.C. § 1226(a) . . . at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence.").

The three-pronged test articulated in *Mathews v. Eldridge* explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether procedural protections satisfy the Due Process Clause, courts consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

### i. Private Interest

As to the first factor, being free from physical detention is "the most elemental of

liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529-30 (2004) (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention). An individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process").

Respondents assert that Petitioner lacks a cognizable liberty interest in remaining outside of immigration custody because he is an "inadmissible parolee." (Doc. 6 at 3.) With this argument, Respondents appear to invoke the "entry fiction" doctrine, which considers noncitizens to have only the rights granted to them by Congress in the context of legal admission to the United States. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). However, the entry fiction doctrine solely applies to the procedural rights of noncitizens regarding *admission*, not *every* procedure occurring in the immigration context. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026)[3]; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (noting that when a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine is inapplicable). In this action, Petitioner challenges only his detention, which is independent of the removal process. (*See* Doc. 1.) As such, Petitioner has a cognizable interest in his physical freedom, which he developed

---

[3] Although *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, the Court is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, the undersigned does not stand alone within the District of Arizona in relying upon *D.V.D. See Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *3–4 (D. Ariz. Mar. 9, 2026).

over the course of the nearly three years that he lived in the interior of the United States pursuant to humanitarian parole. The first *Mathews* factor therefore favors Petitioner.

### ii. Risk of Erroneous Deprivation

Since Petitioner was initially detained without any hearing, the risk of the erroneous deprivation of his liberty is high. Until this Court determined in February 2026 that Petitioner was entitled to a bond hearing and ordered that he receive one, it does not appear that Petitioner was afforded any process or review of his detention. (*See* Doc. 1.) By the time Petitioner received a hearing, he had already spent more than six months in detention. (*Id.*; *Singh v. Rivas*, 2:26-cv-00646-RM-ASB.) The parties dispute whether Petitioner was re-detained pursuant to a warrant; however, Respondents submit a copy of a signed administrative warrant directing Petitioner's arrest. (Doc. 6-3 at 2.) The parties further dispute whether Petitioner was given notice of his impending detention. (Doc. 1 at 6; Doc. 6 at 1-2.) Respondents submit a notice of termination of parole addressed to Petitioner, but admit that this was served upon him the same day that he was arrested. (Doc. 6 at 2.) Moreover, the notice of termination of parole gives no reason for the revocation other than that "[n]either urgent humanitarian reasons nor significant public benefit warrant your continued parole at this time." (Doc. 6-1 at 2.)

Several district courts have concluded that in the immigration context, "due process for 'parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for termination; and (3) an opportunity to rebut the reasons given for termination.'" *Gaitan Coreas v. Mullin*, No. 2:26-CV-00591-GMN-DJA, 2026 WL 1121974 at *6 (D. Nev. Apr. 24, 2026) (citing *Araujo v. LaRose*, No. 25-cv-02942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025)). Even assuming that the appropriate official made the decision that the purpose of Petitioner's parole had been served, Petitioner was not given adequate notice of the reasons for the termination of his parole nor a timely opportunity to rebut those reasons.

Finally, "[s]ome courts have rejected the argument that 'ICE [can] re-detain those released for purely technical violations, like being [ ] late to a check-in,' without regard to

whether that technical violation means that one is a flight risk or danger.'" *Karen Dayana M. R. v. Chestnut*, No. 1:25-CV-01992-SKO (HC), 2026 WL 218808 at *2 (E.D. Cal. Jan. 28, 2026) (collecting cases). Here, there is a dispute as to whether Petitioner complied with the conditions of his release; Petitioner alleges that he was in compliance,[4] and Respondents state that he "missed multiple scheduled office visits, traveled outside of the restricted zone, and failed to maintain his ankle monitor." (Doc. 1; Doc. 6 at 1.) However, even if these allegations are true, some of the violations may be of a technical nature; Respondents provide no detail regarding the incidents to support their purported seriousness. Moreover, Respondents do not contend that they determined these violations to mean that Petitioner was a flight risk or danger.

In light of the above, the Court concludes that the risk of erroneous deprivation of Petitioner's liberty is significant. The second *Mathews* factor weighs in favor of Petitioner.

### iii. Government's Interest

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose minimal cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). And Respondents' interest here is even lower because Petitioner was previously released on parole after immigration authorities necessarily determined he was not a flight risk or a danger to the community. *See Pinchi v. Noem*, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025); *see also Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. July 11, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to process, and that process should have been provided before petitioner was detained."); *Telenchana v. Hermosillo*, 2:26-cv-00363-GJL, 2026 WL 696806, at *7-9 (W.D. Wash. Mar. 12, 2026) (concluding that re-detention of petitioners who had been

---

[4] Without conceding that he violated the conditions of his release, Petitioner avers in his reply that if he did travel outside of the restricted zone, such action was unintentional and not an attempt to avoid supervision or legal proceedings. (Doc. 11 at 1.)

released on their own recognizance violated due process under the *Mathews* framework because petitioners had "established liberty interests," "the absence of pre-deprivation procedures in their re-detentions created an unacceptably high risk of erroneous deprivations," and "the governmental interest in their re-detention without adequate process [was] minimal or non-existent").

Here, the Government may have an enhanced interest in Petitioner's re-detention in light of Petitioner's alleged violations of the conditions of his parole; however, Respondents do not closely connect Petitioner's alleged violations to the decision to re-detain him. On a continuation page for Form I-213 ("Record of Deportable/Inadmissible Alien") submitted by Respondents, there is a paragraph stating that Petitioner "has had multiple violations" even after being "informed to comply with the conditions of his release," and that "[o]n 12/11/23 Stockton ICE/ERO escalated subject's [Alternatives to Detention] program to an ankle monitoring unit (GPS)." (Doc. 6-2 at 3.) This implies that Petitioner's problems complying with the conditions of his release occurred before December 11, 2023. Petitioner was not re-detained until July 27, 2025. (Doc. 6 at 1.) This lack of urgency "suggests that the government itself did not previously believe that [Petitioner] posed such a threat to public safety [or was such a flight risk] that he had to be detained without any pre-detention opportunity to be heard." *Llanes Tellez v. Bondi*, No. 25-CV-08982-PCP, 2025 WL 3677937 at *9 (N.D. Cal. Dec. 18, 2025); *see also Tesara*, 2025 WL 3288295 at *2 (ordering immediate release where detainee had more than forty violations of release conditions but most of the violations occurred months before they were acted upon).

Since the record suggests that Petitioner violated conditions of his parole, but the connection between those violations and the decision to re-detain him is unclear, the Court concludes that the third *Mathews* factor weighs slightly in favor of the Government.

### iv. Conclusion

Two of the three *Mathews* factors weigh in Petitioner's favor and the third factor weighs only slightly in favor of the Government; as such, the Court finds that as applied to

Petitioner, the procedures so far afforded under § 1226(a) have not been sufficient to comport with due process.

In general, during a bond hearing conducted under § 1226(a), "the burden is on the noncitizen to demonstrate that their 'release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" *Velasquez Salazar*, 806 F. Supp. 3d at 1242 (quoting 8 C.F.R. § 236.1(c)(8)). The Ninth Circuit held in *Rodriguez Diaz v. Garland* that placing the burden of proof upon a noncitizen during a § 1226(a) bond hearing is facially constitutional. 53 F.4th 1189, 1213 (9th Cir. 2022). However, "in so holding, [the *Rodriguez Diaz* court] [did] not foreclose all as-applied challenges to § 1226(a)'s procedures." *Id.* "Individualized circumstances" may "warrant[] additional procedures[.]" *Id.*

Given that Petitioner had a liberty interest in his release, was re-arrested without a pre-deprivation hearing, and was held in custody without any bond hearing for over six months, the Court finds that the individualized circumstances of Petitioner's case warrant additional procedures beyond those provided for by §1226(a). Specifically, the Court finds that due process requires the Government to bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011), *abrogated in part as recognized by Rodriguez Diaz*, 53 F.4th 1189; *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020), *rev'd and remanded on other grounds,* 596 U.S. 543 (2022).

**IT IS ORDERED**:

1. The Petition for Writ of Habeas Corpus Under § 2241 (Doc. 1) is **granted** insofar as Petitioner requests an additional bond hearing.

2. Respondents must provide Petitioner a bond hearing within **seven (7) days** of the date this Order is filed. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner

is a flight risk or danger to the community. In the alternative, the Government shall immediately release Petitioner under the previous conditions of his release.

3. Respondents must provide a notice of compliance within **two (2) days** of Petitioner's bond hearing or release. The notice of compliance must **state the result** of Petitioner's bond hearing, if applicable.

4. The Clerk of Court is directed to enter judgment in favor of Petitioner and close this case.

Dated this 18th day of June, 2026.

_____
Honorable Rosemary Márquez
United States District Judge